**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BAYMONT FRANCHISE SYSTEMS, INC., *a Delaware Corporation*,

    *Plaintiff*,

v.

7601 BLACK LAKE RD., LLC, *a Florida Limited Liability Company*; and ROBERT JARVIS, *an individual*,

    *Defendants*.

Civil Action No. 21-18049

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court on the unopposed motion of Plaintiff Baymont Franchise Systems, Inc. ("BFS") for default judgment against Defendants 7601 Black Lake Rd., LLC ("7601 Black Lake") and Robert Jarvis ("Jarvis") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b). D.E. 9. The Court reviewed all submissions[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons that follow, Plaintiff's motion is **GRANTED**.

---

[1] Plaintiff's Complaint and attached exhibits, D.E. 1; Plaintiff's moving brief and attachments, D.E. 9.

I.      BACKGROUND

The facts of this matter derive from Plaintiff's Complaint, D.E. 1, which the Court accepts as true for the purposes of this motion. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011).

On or about December 31, 2018, BFS and 7601 Black Lake entered into a Franchise Agreement (the "Agreement"), under which 7601 Black Lake was to operate a 295-room Baymont guest lodging facility in Kissimmee, Florida (the "Facility") for a twenty-year term. D.E. 1 ¶¶ 9-10. Pursuant to Section 7 of the Agreement, 7601 Black Lake was required to make periodic payments to BFS, including royalties, system assessment fees, taxes, interest, and miscellaneous fees (collectively, "Recurring Fees"). *Id.* at 23. As to the interest rate, 7601 Black Lake agreed to a "rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less[.]" *Id.* 7601 Black Lake's remaining obligations included maintaining accurate financial records and submitting monthly revenue reports to BFS. *Id.* at 15-16.

Under Section 11.2 of the Agreement, Plaintiff could terminate the Agreement on notice if 7601 Black Lake were to "discontinue operating the Facility as a Chain Facility," and/or "lose possession or the right to possession of the Facility." *Id.* at 27. If termination occurred before the last two franchise years, 7601 Black Lake agreed to pay liquidated damages of $300,000. *Id.* at 29. The parties further agreed that the non-prevailing party would pay the "costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement." *Id.* at 34-35.

Jarvis provided Plaintiff with a guaranty ("Guaranty") of 7601 Black Lake's obligations under the Agreement. *Id.* ¶ 19. Pursuant to the Guaranty, Jarvis would "immediately make each payment and perform or cause [7601 Black Lake] to perform, each unpaid or unperformed

2

obligation of [7601 Black Lake] under the Agreement[,]" inclusive of costs incurred by BFS in enforcing the Agreement. *Id.* at 65.

7601 Black Lake unilaterally terminated the Agreement in a letter dated September 11, 2020, by ceasing to operate the Facility as a Baymont entity. *Id.* ¶ 22. On September 30, 2020, BFS acknowledged by letter that 7601 Black Lake had terminated the Agreement. *Id.* ¶ 23. Plaintiff further advised 7601 Black Lake that it was required to pay Plaintiff "liquidated damages for premature termination" in the sum of $300,000 as well as "all outstanding Recurring Fees through the date of termination." *Id.*

Plaintiff filed a Complaint on October 4, 2021. D.E. 1. On January 5, 2022, Plaintiff requested that default be entered against Defendants for failure to plead or otherwise defend in the action, D.E. 5, which the Clerk entered on January 7, 2022. *See* D.E. 9-1. Plaintiff filed the instant motion on February 14, 2022. D.E. 9.

## II.    STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure permits a court to enter a default judgment against a properly served defendant who fails to respond. *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund*, 2011 WL 4729023, at *2 (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 & n.6 (3d Cir.2005)). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

Prior to entering a default judgment, the court must "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). The Court must also consider the following factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

### III. ANALYSIS

#### A. Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject-matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008) (internal quotation omitted)).

Turning first to subject-matter jurisdiction, the Complaint alleges diversity jurisdiction under 28 U.S.C. § 1332. D.E. 1 ¶ 6. To establish such jurisdiction under 28 U.S.C. § 1332(a), "the party asserting jurisdiction must show that there is complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010). "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Lincoln Benefit Life Co. v. AEI Life*, LLC, 800 F.3d 99, 104 (3d Cir. 2015). "[T]he citizenship of an LLC

4

is determined by the citizenship of its members." *Id.* And "[a] natural person is deemed to be a citizen of the state where he is domiciled." *Id.*

Plaintiff is a Delaware corporation with its principal place of business in New Jersey. D.E. 1 ¶ 1. Plaintiff is therefore a citizen of both Delaware and New Jersey. 7601 Black Lake is a Florida limited liability company. *Id.* ¶ 2. The Complaint alleges that Jarvis is the only member of 7601 Black Lake. *Id.* ¶ 4. Jarvis is a citizen of Florida. *Id.* ¶ 3. 7601 Black Lake and Jarvis are therefore citizens of Florida. As a result, the parties are completely diverse from one another. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 202 (3d Cir. 2022). Plaintiff alleges that the amount in controversy exceeds $75,000. D.E. 1 ¶ 5. Thus, the Court has subject-matter jurisdiction.

As for personal jurisdiction, Plaintiff alleges that 7601 Black Lake consented to jurisdiction through a forum selection clause in the Agreement and that Jarvis consented through the Guaranty. *Id.* ¶¶ 6-7. "[P]arties can consent to the jurisdiction . . . of any particular court." *Hewlett-Packard Fin. Servs. Co. v. New Testament Baptist Church*, No. 18-10230, 2019 WL 3800234, at *4 (D.N.J. Aug. 13, 2019). In federal court, the validity of a contractual forum selection clause is determined by federal law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). "The United States Supreme Court has held that a contractual consent to personal jurisdiction should be enforced unless it would be unreasonable or unjust to do so." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 373 (D.N.J. 2000) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)). A forum selection clause will be invalidated only when the opposing party establishes "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in in a jurisdiction so seriously inconvenient as to be

5

unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983).

Section 17.6.3 of the Agreement reads as follows:

> You[, 7601 Black Lake,] consent and waive your objection to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey for all cases and controversies under this Agreement or between we and you.

D.E. 1 at 35. The Guaranty provides that "[w]e acknowledge that Section 17 of the Agreement, including Remedies, Venue, Dispute Resolution, and waiver of jury trial, applies to this Guaranty." *Id.* at 65. Those clauses are enforceable as Defendants have not offered any ground for invalidation. Thus, the Court has personal jurisdiction over both 7601 Black Lake and Jarvis.

### B. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant[s]." *Teamsters Pension Fund*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co.*, Inc., 756 F.2d 14, 19 (3d Cir. 1985)). Plaintiff indicates that service upon 7601 Black Lake and Jarvis was proper under Federal Rule of Civil Procedure 4(e)(1).[2] D.E. 9-2 at 5. That Rule provides as follows:

> Unless federal law provides otherwise, an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.

---

[2] Because Rule 4(e)(1) indicates how an individual may be served, the proper rule for 7601 Black Lake, a limited liability company, appears to be Rule 4(h)(1)(A). However, pursuant to Rule 4(h)(1)(A), a limited liability company may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual."

6

Fed. R. Civ. P. 4(e)(1).  Plaintiff maintains that it properly served 7601 Black Lake and Jarvis pursuant to New Jersey law.  D.E. 9-2 at 5.  Specifically, Plaintiff asserts that it complied with New Jersey Court Rule 4:4-4(b)(1)(C) "by mailing a copy of the Summons and Complaint via regular and certified mail, return receipt requested[,]" D.E. 6 ¶ 6, and filing an "affidavit of diligence explaining that [BFS's] process server attempted to serve each defendant on multiple occasions."  D.E. 9-2 at 5.

The cited New Jersey Rule provides as follows:

> If it appears by affidavit satisfying the requirements of R. 4:4-5(b) that despite diligent effort and inquiry personal service cannot be made in accordance with paragraph (a) of this rule, then, consistent with due process of law, *in personam* jurisdiction may be obtained over any defendant as follows:
>
> mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, and, simultaneously, by ordinary mail to: (1) a competent individual of the age of 14 or over, addressed to the individual's dwelling house or usual place of abode; (2) a minor under the age of 14 or a mentally incapacitated person, addressed to the person or persons on whom service is authorized by paragraphs (a)(2) and (a)(3) of this rule; (3) a corporation, partnership or unincorporated association that is subject to suit under a recognized name, addressed to a registered agent for service, or to its principal place of business, or to its registered office.  Mail may be addressed to a post office box in lieu of a street address only as provided by R. 1:5-2.

N.J. Ct. R. 4:4-4(b)(1)(C).  New Jersey Court Rule 4:4-5(b) in turn provides that

> [t]he inquiry required by this rule shall be made by the plaintiff, plaintiff's attorney actually entrusted with the conduct of the action, or by the agent of the attorney; it shall be made of any person who the inquirer has reason to believe possesses knowledge or information as to the defendant's residence or address or the matter inquired of; the inquiry shall be undertaken in person or by letter enclosing sufficient postage for the return of an answer; and the inquirer shall state that an action has been or is about to be commenced against the person inquired for, and that the object of the inquiry is to give notice of the action in order that the person may appear and defend it.  The affidavit of inquiry shall be made by

7

> the inquirer fully specifying the inquiry made, of what persons and in what manner, so that by the facts stated therein it may appear that diligent inquiry has been made for the purpose of effecting actual notice.

N.J. Ct. R. 4:4-5(b). "New Jersey Court Rule 4:4-5(b) requires the plaintiff to submit an affidavit stating that despite diligent inquiry and effort, the defendant cannot be personally served in New Jersey." *Baymont Franchise Sys., Inc. v. Bernstein Co., LLC*, No. 18-620, 2019 WL 1455577, at *3 (D.N.J. Apr. 1, 2019) (citing N.J. Ct. R. 4:4-5(b); *Sobel v. Long Island Ent. Prods., Inc.*, 747 A.2d 796, 800 (N.J. Super. Ct. App. Div. 2000)).

Thus, New Jersey law only allows service by mail, as opposed to personal service, if a party submits the affidavit required by New Jersey Court Rule 4:4-5(b). Examining the exhibits attached to D.E. 6, the Court finds that Plaintiff satisfies New Jersey Court Rule 4:4-5(b) because the documents show that a process server went to Jarvis' current address and attempted to serve him as the Registered Agent of 7601 Black Lake and in his individual capacity but was unable to gain entry to the secured condominium complex. D.E. 6 at 4. An employee of the process server hired by Plaintiff contacted management of the complex but was only able to confirm that Jarvis owned a unit in the complex. *Id.* Subsequently, another process server went to the mailing address for 7601 Black Lake but found that the location was a hotel under renovation with only construction workers on-site. *Id.* at 5.

The Court further determines that Plaintiff has served 7601 Black Lake and Jarvis in accordance with New Jersey Rule 4:4-4(b)(1)(C). In an attorney certification, Plaintiff indicates that BFS served Defendants "with a copy of the Summons and Complaint via regular and certified mail, return receipt requested[.]" *Id.* ¶ 6. Plaintiff also includes a copy of the certified and regular mail. *Id.* at 10. Accordingly, the Court finds that Plaintiff has properly served 7601 Black Lake and Jarvis pursuant to Federal Rule 4(e)(1).


### C. Sufficiency of Plaintiff's Cause of Action

Next, the Court must determine whether the Complaint adequately states a cause of action. As noted, the Court must accept all well-pleaded factual allegations in the pleadings as true, except as to damages. *Chanel, Inc.*, 558 F. Supp. 2d at 535-36. The Complaint includes six counts but does not label the cause of action raised in each count. D.E. 1 ¶¶ 24-50. In its letter brief, Plaintiff appears to represent that all six counts assert claims for breach of contract. *See* D.E. 9-2 at 6.

Plaintiff does not explicitly indicate which state's law governs its breach of contract claims. However, Plaintiff does cite to New Jersey case law in its analysis of its claims. *See id.* Moreover, Section 17.6.1 of the Agreement provides that it "will be governed by and construed under the laws of the State of New Jersey[.]" D.E. 1 at 35. The Guaranty executed by Jarvis incorporates Section 17 of the Agreement. *Id.* at 65.

In the usual diversity-jurisdiction case, "[t]o choose which state law will apply, 'a federal court . . . must apply the choice-of-law rules of the forum state.'" *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017) (quoting *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). This analysis is required "*even where the contract contains a choice-of-law clause*." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 300 (D.N.J. 2020) (emphasis in original); *see also Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 295 (3d Cir. 2021). Thus, the Court must "turn to New Jersey choice-of-law rules to determine what state's substantive law governs because this diversity action originated in a New Jersey federal district court." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 651 (D.N.J.

2018) (quoting *Instructional Sys, Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Courts applying New Jersey law look to Section 187 of the Second Restatement of Conflicts of Laws "to determine under what circumstances a choice-of-law clause will *not* be respected." *Collins*, 874 F.3d at 184 (emphasis in original). Plaintiff does not perform this analysis, but instead appears to assume that those contractual provisions are valid, and that New Jersey law governs. The Court is not aware of any potential violation of New Jersey's public policy, so the Court will apply New Jersey law.

"To prevail on a claim of breach of contract" under New Jersey law, plaintiffs must

> prove four elements: first, that the parties entered into a contract containing certain terms; second, that plaintiffs did what the contract required them to do; third, that defendants did not do what the contract required them to do, defined as a 'breach of the contract'; and fourth, that defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs.

*Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (citing *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)) (internal quotation marks omitted).

After reviewing the Agreement and the Guaranty, the Court finds that Plaintiff has established the first element. Next, it appears that Plaintiff performed its obligations under the agreements, *see, e.g.*, D.E. 1 at 70 (indicating that Plaintiff permitted Defendant to use Plaintiff's signage and trademarks), so the second requirement is satisfied as well. The Court further finds that Defendant breached the Agreement by shutting down the Facility. D.E. 1 ¶ 22. Further, Plaintiff indicates that Jarvis has failed to live up to his obligations under the Guaranty. *Id.* ¶ 50. Accordingly, the Court finds that Plaintiff has satisfied the third element. Finally, Plaintiff incurred damages because of Defendants' breach. D.E. 9-2 at 6.

Accordingly, the Court finds that Plaintiff has stated claims for breach of contract.

### D. Damages

While the factual allegations pleaded in the Complaint "will be taken as true," the amount of damages must still be proven. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Further, courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016). In the second count of the Complaint, Plaintiff seeks $300,000.00 in liquidated damages, along with interest, fees, and costs. D.E. 1 ¶ 34. In the fourth count, Plaintiff seeks Recurring Fees totaling $66,046.03. *Id.* ¶ 42.

As to Recurring Fees, Plaintiff asserts that those fees are calculated pursuant to "mutually agreed upon formulas set forth in section 7, section 18.1, and Schedule C of the Franchise Agreement[.]" D.E. 9-2 at 7. Plaintiff also refers to the following:

> BFS is now seeking Recurring Fees in the current amount of $69,413.77, inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to section 7.3 of the Franchise Agreement). Attached hereto as Exhibit E is a copy of an itemized statement prepared by BFS, which sets forth the amount of Recurring Fees due and owing from Defendants, inclusive of interest, as of February 10, 2022.

D.E. 9-4 ¶ 18 (footnote omitted). In reviewing Exhibit E, the Court finds that the financial log adequately establishes the amounts sought. *See* D.E. 9-4 at 75. Accordingly, the Court finds that Plaintiff has established its entitlement to past-due Recurring Fees of $69,413.77.

Plaintiff also points to Section 18.2 of the Agreement, which calls for liquidated damages in the amount of $300,000.000 "for a Termination that occurs before the last two Franchise Years[.]" D.E. 1 at 37. Additionally, Plaintiff asserts that it may further collect interest on this amount "calculated at the legal rate of interest of 1.5% per month in the amount of $77,821.70[,]" bringing its total liquidated damages to $377,821.70. D.E. 9-2 at 8.

Under New Jersey law, contractual provisions calling for liquidated damages are subject to judicial scrutiny before they are enforced. *MetLife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 732 A.2d 493, 499 (N.J. 1999). Such scrutiny arises from the public policy concern that unreasonably large liquidated damages clauses would constitute a "penalty." *Id.* at 498. To be enforceable in New Jersey, a liquidated damages clause must be considered a "reasonable forecast of just compensation" for harm caused by breach of the contract. *Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 106 (N.J. 1994). Consistent with this "reasonableness" test, New Jersey courts have also considered the difficulty of calculating actual damages and the infeasibility of obtaining an alternative remedy. *Id.* at 107. Importantly, courts observe that "liquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable" and burden "the party challenging the clause . . . [with] proving its unreasonableness." *MetLife*, 732 A.2d at 499; *see also Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 159 (3d Cir. 2015).

Because the Defendants have not appeared in the action, they do not contest the provision's reasonableness. In addition, the Court finds that Plaintiff has adequately established its claim for liquidated damages because the amount was contractually agreed upon. Plaintiff asserts that actual damages would equate to $590,000, calculated at $2,000 per-room revenue in the 295-room Facility. D.E. 9-2 at 8. However, Plaintiff also states that "the parties negotiated a lesser amount as a reasonable forecast" of the harm resulting from breach. *Id.* Therefore, the amount of liquidated damages appears reasonable.

Accordingly, the Court finds that Plaintiff has adequately established its damages.

### E. Default Judgment Factors

Before entering default judgment, district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Here, all three factors weigh in favor of entering default judgment. Because Defendants have not responded in this matter, they have "put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. Additionally, there is nothing on the face of the Complaint indicating that a meritorious defense is available. Plaintiff has also been prejudiced by Defendants' failures to respond as Plaintiff cannot seek relief in the normal course. *See Teamsters Pension Fund*, 2011 WL 4729023, at *4. Finally, Defendants' failure to answer evidences culpability in their default, *see id.*, as do their apparent efforts to evade service of process, *see Dee Paper Co., Inc. v. Loos*, No. 15-1513, 2015 WL 5460590, at *5 (E.D. Pa. Sept. 17, 2015) (declining to vacate default judgment where even though plaintiff "would apparently suffer no prejudice, both the lack of a meritorious defense and culpable conduct in evading service lead this court to deny the motion"). As a result, the Court finds that default judgment is appropriate.

### IV. CONCLUSION & ORDER

For the foregoing reasons, Plaintiff's motion for default judgment is granted. An appropriate Order accompanies this Opinion.

Dated: June 14, 2022

*[signature]*
John Michael Vazquez, U.S.D.J.